WILLIAM LATSHAW, Plaintiff in Error, *v.* TERRITORY OF OREGON, Defendant in Error.

## *Error to Lane.*

1. It is not error for the court to refuse instructions to a jury upon a state of things of which there is no evidence in the case.
2. When several persons are jointly indicted, one is not a competent witness for another, without being first acquitted or convicted, though the defendants have separate trials.

AT the October Term, A. D. 1854, of the court below, Latshaw and one Crisman were enjointly accused by the grand jury of the crime of extortion, by means of malicious threats, against the person of the prosecuting witness. The prisoners severed in their trials, and Latshaw was tried, convicted, and sentenced by the court to " six months imprison-

Latshaw *v.* Territory.

ment in the common jail, and to pay a fine of one hundred dollars, and the costs of prosecution." The prisoner then moved for a new trial, which was overruled. Subsequently the judge, before whom the cause was tried, allowed a writ of error to bring the record into this court for review.

*M. Chinn,* for plaintiff in error.

*R. P. Boise,* for territory.

DEADY, J.  Section 34, page 189, of the Code, upon which this indictment was found, is as follows: "If any person, either verbally or by any written or printed communication, shall maliciously threaten any injury to the person or property of another, with intent thereby to extort money, or any pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall be punished upon conviction," &c.

The errors assigned by the prisoner are as follows:

*First.* That the verdict was contrary to the evidence.

*Second.* That the verdict was contrary to law.

*Third.* That the court misdirected the jury.

*Fourth.* That the court improperly refused the testimony of the witness, Archibald Crisman.

The bill of exceptions contains all the evidence given to the jury. The prosecuting witness was the only witness called to the stand. The first two grounds of error are a mere repetition of one another. We think the evidence warrants the conclusion of the jury; and although it should be a question of doubt whether the guilt or innocence of the prisoner is the correct conclusion from the facts, the question has been decided by the jury; it was their peculiar province to decide

it, and the court below was correct in refusing to set the verdict aside.

The third error, "that the court misdirected the jury," will now be considered. Before the jury retired, the counsel for the prisoner asked the court to charge the jury, as follows : "That if the jury believe, from the evidence, that Latshaw and Crisman, or either of them, did, by assault and putting in fear, feloniously rob, steal and take from the person of witness, John P. Williams, the watch mentioned in the indictment, at the time therein specified, they, or the one making the assault, either being armed or unarmed, the jury cannot find defendant guilty under this indictment." This instruction the court gave in charge to the jury, but added, "that in this case no assault was made." It is now contended for the prisoner that the court erred in adding the words "that in this case no assault was made," and to support the argument, that familiar axiom of the law is cited, "that it is the province of the court to decide upon the law, and the jury upon the facts." Whenever there is *any* evidence tending to prove a fact within the issue, the jury must pass upon it; and it is error for the court to instruct them that such a fact does or does not exist, that it has or has not been proven. But when there is *no* evidence tending to prove a fact, and counsel seek by instructions or argument to·submit the question to the jury, the court, in its discretion, may very properly say to the jury that no such question can arise in the case. The court is not bound to give instructions which, although as abstract propositions of law may be correct, yet with reference to the case made, are irrelevant. Such instructions can only serve to embarrass the minds of the jury by burdening their deliberations with the considerations of questions of fact, and the application of principles of law that are foreign to the issue they have sworn to try. We think there was *no* evidence given to the jury that an " assault was made." The threats of personal injury are all made with distinct reference to some time in the future, and upon contingency that the witness should continue to withhold from the pris-

oners the property sought to be obtained by such threats. An *assault* is an attempt with force or violence to do a corporal injury ; the act must be accompanied with such circumstances as denote at the *time* an intention, coupled with a present ability of actual violence against the person of another. (*See* 1 *Selw. N. P.* 6th edit. 27 ; 1 *Russel,* 862 ; *Bac. Abr. Assault.*) From this definition of assault, it is clear " that in this case there was no assault made," and, therefore, no error in the court to so instruct the jury.

A second instruction was asked by the counsel for the prisoner, which was refused by the court. It is in these words : "That if defendant, Latshaw, or Latshaw and Crisman together, did, by threats, and putting witness, J. P. Williams, in fear, compel him then and there to give up his watch to defendant, Latshaw, then Latshaw cannot be convicted under this indictment." That the refusal to give this instruction to the jury was not erroneous, is so plain that it need only be compared with the words of the section upon which this indictment was founded. The instruction describes substantially the very offence embraced in the thirty-fourth section, and if the jury believed "that defendant, Latshaw, did, by threats, and putting witness, J. P. Williams, in fear, compel him to give up his watch," and that said Latshaw made such threats with that intent, then it was their duty to find the prisoner guilty. The fact that the property had been given up under the influence of the threats, could not palliate the prisoner's guilt, or take the offence out of the statute. The intent of the prisoner constitutes the *gravamen* of the offence, without reference to the effect produced upon the party threatened. The latter may be a courageous man, and refuse to give up his property, whatever may be the threats or intention of the prisoner ; or he may be a timid man, and immediately deliver it ; but in either event, the intention of the prisoner to extort the property is the question to be determined by the jury, and if they find he made the threats with the intent to extort the property, the subsequent conduct of the party threatened can neither enhance nor palliate the guilt of the

accused, although it may be considered by the jury, for the purpose of determining the main question, the intent.

The only remaining error to be considered is the refusal to permit Crisman, the co-defendant, to be sworn upon the trial as a witness on behalf of the prisoner. As this seems to be the point relied upon by the counsel for the prisoner, we have given it careful attention, and conclude that upon authority, reason and public policy, the refusal was correct. Counsel for the prisoner have, in the argument, placed Crisman in the position of an accomplice. The authorities cited to show that he is a competent witness, have reference to accomplices, and accomplices merely. While it is admitted that Crisman is an accomplice, it is equally apparent that he is something more. He is a co-defendant, jointly indicted with the prisoner, and a party to the record. For the prisoner, it has been said, that if one, jointly indicted with others, cannot be a witness for his co-defendants, the prosecution may oppress a defendant by including in the indictment the names of the defendant's witnesses, and thus preclude him from the benefit of that testimony, which would exonerate him from the charge. But the assumption is incorrect in point of fact. The prosecution is not the suit of a private person, which is sometimes converted into the means of gratifying private malice or spleen, rather than the enforcement of a right, or the redress of a wrong. The prosecution is the act of the people collectively, moving by means of preconstituted authorities, uninterested in the result, save to punish the guilty and to acquit the innocent. It is not likely that twenty-four grand jurors, sworn to act impartially, would lend their sanction to oppression of this kind; and if by misapprehension such an instance should occur, the accused is not without remedy. Upon the close of the testimony for the prosecution, if *no* evidence whatever be given against any one of the persons joined in the indictment, such person is then entitled to his discharge, and may be examined on behalf of the other defendants. (*See Chitty's Crim. Law, vol.* 1, *p.* 626, *and authorities there cited;*

*State* v. *Shaw*, 1 *Root*, 134 ; *C. & H.'s Notes, part* 1 ; *Phil. Ev. n.* 25.)

In this territory, all persons jointly indicted for felony may have separate trials, as a matter of right. (*See Code, sec.* 2, *p.* 252.) All persons jointly concerned in the commission of a crime must, in the very nature of things, have a strong interest in the acquittal of their fellows. If, by severing in their trials, they may be witnesses for each other, each has an inducement, with which no pecuniary interest can compare, to procure the acquittal of the other. Reason and experience teach that if the practice was established, it would be highly dangerous and subversive of justice. No authority has been found making a person so situated a competent witness for his co-defendant. "When several persons are jointly indicted, one is not a competent witness for another, without being first acquitted or convicted, and it makes no difference whether the defendants plead jointly or separately." (*The People* v. *Bill*, 10 *John. Rep.* 95.) So, where two were jointly indicted for larceny, and being separately arraigned, pleaded and were tried separately, it was held that a party in the same indictment cannot be a witness for his co-defendant, until he has been first acquitted, or, in some cases, convicted, whether the defendants be jointly or separately tried. (*Campbell* v. *The Commonwealth*, 2 *Virg. Cas.* 314.) "Defendants, jointly indicted, cannot be witness for or against each other until they are discharged from the prosecution, or convicted." (*State* v. *Mooney*, 1 *Yerger*.) "When several defendants are indicted together, one of them cannot regularly become a witness for the others." (*Chitty's Crim. Law, vol.* 1, *p.* 626.)

Judgment affirmed.