Argued and submitted March 16, affirmed August 10, 1983

## STATE OF OREGON,
*Respondent,*

*v.*

## MICHAEL WADE HALEY,
*Appellant.*

(82-1076 (Control), 82-1077;
CA A26195 (Control); CA A26196)
(Cases Consolidated)

667 P2d 560

Ronald K. Cox, Assistant Public Defender, Coquille, argued the cause and filed the brief for appellant.

Alta Brady, Certified Law Student, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Christine Dickey, Assistant Attorney General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant seeks reversal of his convictions for driving while suspended (ORS 487.560(1)) and driving under the influence of intoxicants (ORS 487.540), contending that the trial court erred by withdrawing his affirmative defense of necessity from the jury. Because defendant offered no evidence to support one of the two elements of that defense, the trial court's ruling was not reversible error. We therefore affirm.

Prior to trial, defendant stipulated that he was driving a motor vehicle on the night of his arrest, that his driver's license was suspended and that he was under the influence of intoxicants. Despite these stipulations, defendant pleaded not guilty to the charge of driving while suspended and raised a "necessity" defense under ORS 487.560(2)(a). That statute states:

"(2)   In a prosecution [for the crime of 'driving while suspended'] * * * it is an affirmative defense that:

"(a)   An injury or immediate threat of injury to human or animal life and the urgency of the circumstances made it necessary for the defendant to drive a motor vehicle at the time and place in question; * * *"

In support of his defense, defendant introduced evidence that his father had fallen from a bar stool and broken his ankle and that he, defendant, was driving his father to the hospital when the police officer stopped their car. The state asked the court to withdraw the necessity defense from the jury; the court granted the motion. This appeal followed.

Defendant first asserts that the trial court lacked the statutory authority to withdraw his defense from the jury. The relevant statute, ORS 161.055, provides, in pertinent part:

"(1)   When a 'defense,' other than an 'affirmative defense' as defined in subsection (2) of this section, is raised at a trial, the state has the burden of disproving the defense beyond a reasonable doubt.

"(2)   When a defense, declared to be an 'affirmative defense' by chapter 743, Oregon Laws 1971,[1] is raised at a

---

[1]Oregon Laws 1971, Chapter 743, was the "Oregon Criminal Code of 1971," a major overhaul of the state's criminal statutes. Affirmative defenses to crimes defined in that act were set forth, and labelled as affirmative defenses, in the sections defining the pertinent offenses. ORS 161.055 was a part of that legislation.

trial, the defendant has the burden of proving the defense by a preponderance of the evidence.

"* * * * *"

Defendant argues that because the legislature did not adopt the necessity defense until 1975,[2] that defense is not "declared to be an affirmative defense by chapter 743, Oregon Laws 1971." (Emphasis supplied.) Consequently, according to defendant, he had only to present some evidence of necessity in order to shift the burden to the state to disprove the defense beyond a reasonable doubt and, because the burden had shifted to the state by the time the state made its motion, the trial court could not properly withdraw the defense from the jury.

■ We disagree with defendant's analysis. ORS 161.035(2) provides that defenses adopted by the legislature after 1971 should be construed and applied in the same manner as defenses adopted as a part of Chapter 743, Oregon Laws 1971:

> "(2)   Except as otherwise expressly provided, or unless the context requires otherwise, *the provisions of chapter 743, Oregon Laws 1971, shall govern* the construction of and punishment for any offense defined outside chapter 743, Oregon Laws 1971, * * * as well as *the construction and application of any defense to a prosecution for such an offense.*" (Emphasis supplied.)

Because defendants bear the burden of proof with respect to all affirmative defenses created by chapter 743, the emphasized language of ORS 161.035(2) means that, absent some express direction or contextual requirement to the contrary, defendants bear the burden of proof with respect to *all* affirmative defenses. Neither the language nor the context of ORS 487.560(2)(a), nor any other statute, aids defendant under this rule.

■ We hold that defendant, having raised a necessity defense, had the burden of proving by a preponderance of the evidence (1) that there was an injury or threat of injury to human or animal life and (2) that the urgency of the circumstances made it necessary for him to drive at the time and place

---

[2] Or Laws 1975, ch 451, § 92.

in question. It follows from this holding that, if either element of the defense lacked evidentiary support, the trial judge had the authority to withdraw the defense from the jury's consideration. *State v. Peters,* 49 Or App 653, 619 P2d 1360 (1980); *see also State v. Matthews,* 30 Or App 1133, 1135, 569 P2d 662 (1977).[3]

Defendant next contends that the trial court erroneously interpreted ORS 487.560(2)(a) by requiring defendant to show that his father's injury was "life-threatening." The trial court's oral ruling on the state's withdrawal motion demonstrates that the court interpreted the statutory phrase "injury or threat of injury to human or animal life" to mean "life-threatening injury" and granted the motion in part because defendant had failed to produce evidence of a "life-threatening" injury.[4] The state agrees with the trial court's

---

[3] Our holding is consistent with other case law interpreting ORS 487.560(2) and with the legislative history of that provision. *State v. Buttrey,* 293 Or 575, 583, 651 P2d 1075 (1982); *see State v. Peters, supra; State v. Lawrence,* 36 Or App 733, 736, 585 P2d 727 (1978); Minutes, House Committee on Judiciary, May 5, 1975, at 2.

[4] The state, arguing its motion for withdrawal, said:

"* * * [W]hat I am saying is [that defendant had] not shown that there was an *immediate life threatening situation.* * * * Neither [has defendant] shown that it was necessary for [defendant] to drive rather than calling an ambulance; rather than seeking aid from other people in the bar; rather than calling the police; rather than having two people who were examined by another police officer who were found not to be under the influence of intoxicants. Have them drive. * * *"

The trial judge then made the following findings and statements in his oral ruling:

"* * * * *

"Certainly there is no evidence at all that there was a *life threatening situation* here. * * *

"* * * * *

"* * * [T]here is no evidence in the case that there was *a threat of injury to life,* and so I will withdraw the emergency defense.

"* * * * *

"* * * I find that there was no *threat of injury to* the defendant's father's *life* and that there was no urgency or [of] circumstances that made it necessary for the defendant to drive a vehicle at the time and place in question * * *.

"* * * * *

"* * * There was no evidence in the case at all that it appeared to the defendant that there was a *life threatening* situation. * * *

"* * * * *

"* * * [The] injury had already taken place [and] there is nothing to indicate that the defendant's father's injury would have been worsened or that he could

interpretation. Defendant, on the other hand, contends that the statute does not require such evidence. We are thus called on to decide for the first time whether ORS 487.560(2)(a) requires *proof of an injury of "life-threatening"* severity.[5]

■      As noted, the statute requires a defendant to show "an injury or threat of injury to human or animal life." This phrase could mean either: (1) actual or threatened harm to a human being or an animal, as opposed to other, inanimate property, or (2) actual or threatened harm severe enough to cause the death of a human being or an animal. Neither the remainder of the statute nor its commentary resolves this ambiguity. We are convinced, however, that the legislature intended the statute to have the former meaning.

■      First, a comparison of the "necessity" defense at issue here and the more general "choice of evils" defense in ORS 161.200 suggests that the reference to "human or animal life" in ORS 487.560(2)(a) is simply intended to make the "necessity" defense unavailable when the "injury or threat of injury" is to real or personal *property* rather than a living creature. By contrast, the "choice of evils" statute provides:

"(1)      Unless inconsistent with * * * some other provision of law, conduct which would otherwise constitute an offense is justifiable and not criminal when:

"(a)      That conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

"(b)      The threatened injury is of such gravity that, according to ordinary standards of intelligence and morality,

---

have been further injured had the defendant not driven him to the hospital. * * *" (Emphasis supplied.)

[5] The state contends that we answered this question in the affirmative in *State v. Peters, supra.* The defendant in *Peters* alleged that his mother's illness required him to drive her to the hospital. The severity of the defendant's mother's illness was not in issue, but we noted in passing that "the jury could have found [from the evidence] that the situation appeared to defendant to be life-threatening." The state argues that this language establishes a requirement that defendants prove "life-threatening" injury in order to establish a necessity defense. The state is mistaken. As noted above, a defendant asserting a necessity defense must prove two elements: (1) actual or threatened injury and (2) urgent circumstances. The issue in *Peters* involved the second element. Our brief discussion of the "injury" element was therefore dictum rather than a considered interpretation of the pertinent statutory language.

the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

"* * * * *"

This language and the Official Commentary to the 1971 Oregon Criminal Code, at 20, demonstrate that the choice of evils defense may be invoked by a defendant who has acted unlawfully in order to prevent the destruction of inanimate property. The necessity defense is similar in nature to the choice of evils defense but narrower: it will only shelter a defendant whose illegal action was intended to remedy or prevent injury to human or animal *life*. This difference in the scope of the two defenses was achieved by the legislature's use of the phrase "human or animal life" in ORS 487.560(2)(a). We think it is fair to assume that the creation of that distinction was the only purpose of the phrase "human or animal life."

Second, the imposition of a "life-threatening" standard could have unreasonably harsh effects in certain circumstances. For example, suppose that a suspended driver and another person travel 30 miles by motor vehicle to a remote area in order to camp and hike. In the course of a hike, the suspended driver's companion breaks his leg. It is clear to the suspended driver that his companion is not in danger of dying, although he is in pain. The driver is faced with a choice: he can violate ORS 487.560(1) and drive 30 miles for help, or he can *hike* that distance. The state's construction of subsection (2)(a) would compel the latter decision, but we think it unlikely that the legislature intended such a harsh result. We have often held that we "presume the legislature did not intend harsh results that literal application of statutory terms would cause." *State ex rel Juv. Dept. v. Gates,* 56 Or App 694, 699, 642 P2d 1200 (1982); *Mallon v. Emp. Div.,* 41 Or App 479, 484, 599 P2d 1164 (1979). *A fortiori,* we are not inclined to read into *ambiguous* language a meaning with the potential to produce such results.

Third, there is no harm in omitting a "life-threatening" requirement from the defense. If the state is concerned that, absent such a requirement, suspended drivers will use passengers' minor cuts and pulled muscles to establish the

defense, the state's fear is unfounded. In addition to proving the existence or threat of an injury, a defendant must demonstrate that the "urgency of the circumstances" compelled him to drive. The circumstances attending most minor injuries will not be "urgent" enough to aid in the establishment of a necessity defense.

■     Finally, we note that, as a general rule of statutory construction, we are to resolve doubts about legislative intent in favor of criminal defendants. *State v. Linthwaite,* 52 Or App 511, 523 n 12, 628 P2d 1250 (1981), *rev'd and rem'd on other grounds,* 295 Or 162, 665 P2d 863 (1983); *see State v. Cloutier,* 286 Or 579, 587-88, 596 P2d 1278 (1979). In the absence of clear legislative intent or other reasons why we should read a requirement of "life-threatening" injury into the ambiguous language of ORS 487.560(2)(a), we decline to do so. To the extent that the trial court imposed such a requirement on defendant, the court erred.

■■     Our refusal to apply a "life-threatening" standard does not, however, require reversal. As the findings quoted, *supra* n 4, demonstrate, the trial court found no evidence that "the urgency [of] the circumstances made it necessary" for defendant to drive his father to the hospital. This finding was based on evidence that defendant made no attempt to telephone an ambulance, the police or other emergency services, although he knew such services existed in the vicinity, and did not request the driving assistance of other individuals at the bar who were both sober[6] and licensed. Defendant *offered no* explanation for his failure to secure an alternative form of transportation for his father, and he points to no other evidence which could support an inference that the "urgency of the circumstances" compelled *him* to drive his injured parent to the hospital. The language of ORS 487.560(2)(a) makes it clear that a defendant seeking to establish a necessity defense

---

[6] When a court or jury makes its assessment of the "urgency of the circumstances," it is appropriate to consider the fact that the defendant was intoxicated at the time.

must prove *both* injury and urgent circumstances. Defendant's failure to offer evidence to establish the latter element justified the trial court's decision to withdraw the necessity defense from the jury. *State v. Peters, supra.*

Affirmed.