Argued and submitted July 12, the decision of the Court of Appeals and judgment of the trial court reversed and remanded to trial court for a new trial September 29, 1988

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## RICHARD EDWARD BROWN,
*Petitioner on Review.*

(TC 10-87-01282; CA A45416; SC S35186)

761 P2d 1300

Shaun S. McCrea, McCrea, P.C., Eugene, argued the cause and filed the petition for petitioner on review.

Brenda Peterson, Assistant Attorney General, Salem, argued the cause for respondent on review.

LENT, J.

**LENT, J.**

The first issue is what a defendant must prove to establish the defense described in ORS 811.180(1)(a) to a charge of driving while suspended. The statute provides:

"(1)   In addition to other defenses provided by law * * * it is an affirmative defense to the offenses described in ORS 811.175 [driving while suspended or revoked] * * * that:

"(a)   An injury or immediate threat of injury to a human being or animal, and the urgency of the circumstances made it necessary for the defendant to drive a motor vehicle at the time and place in question[.]"

The second issue is whether the evidence was sufficient to require submission to the jury of defendant's affirmative defense under that statute.[1] We hold that the evidence here was sufficient to present a question for the jury.

The statutory text raises some questions. Must there be an actual injury or immediate threat thereof or only an appearance thereof? What is the meaning of "injury"? We shall address these questions as we proceed.

Defendant appeals his conviction for driving while suspended. He does not dispute that he was driving while his license was suspended; rather he seeks to raise the affirmative defense provided by ORS 811.180.[2]

After defendant had rested, the state moved to withdraw the defense from the jury's consideration on grounds that the evidence was insufficient to allow the jury to consider the defense. During argument on the motion, the state cited *State v. Haley,* 64 Or App 209, 667 P2d 560 (1983). In that case the court held that defendant must prove two things: that there was an immediate threat of injury to a person or an

---

[1] This case does not involve injury or immediate threat of injury to an animal other than a human being. There is no occasion for us to consider, therefore, whether any particular animal is within the statutory word "animal." We note, however, that that determination is an interpretation of the text of the statute and must be a question for the court and not the jury. In other words, biologically speaking, an animal (other than a human being) might be anything from a single-celled animal such as a paramecium to a primate, but we doubt very much that the legislature had in mind all animals. Whether a given animal is within the statute must be decided by the court as a matter of law.

[2] A defendant has the burden to prove an affirmative defense by a preponderance of the evidence.

animal and that the urgency of the circumstances required the defendant to drive to avert or remedy the emergency. The court stated that "if either element of the defense lack[s] evidentiary support, the trial judge ha[s] the authority to withdraw the defense from the jury's consideration." 64 Or App at 213.

Though this trial court's statements are not completely clear, it appears that the court interpreted *Haley* to permit it to evaluate whether the evidence established the existence of the defense before submitting the case to the jury. The court told the parties, "I'll grant the Motion. I don't think you can make it on either prong. That defense will be removed from the jury." The court then told the jury:

> "I have, what is called stricken the Defendant's asserted defense based upon necessity, called the 'Defense of Necessity.' In order to have you consider that defense the Defendant has to bring forward sufficient evidence that there's statutory language of injury or immediate threat of injury to human being or animal, that that threat existed and the urgency of the circumstances made it necessary for the Defendant to drive at the time and place in question.
>
> "I rule as a matter of law that the evidence presented was not sufficient to allow you to consider that defense, so that is out of this case at this point * * *."

The defendant was convicted, and the Court of Appeals affirmed his conviction without issuing an opinion. *State v. Brown,* 90 Or App 445, 752 P2d 1316 (1988). Defendant argued on appeal that a defense should be withdrawn from the jury's consideration only if the record contains *no* evidence on an essential element of the defense.

In civil cases, the jury must be permitted to consider every claim on which the plaintiff has presented *some* evidence tending to establish each element of that claim. *See, e.g., Wagner v. Kaiser Foundation Hospitals,* 285 Or 81, 84, 589 P2d 1106 (1979), wherein the court stated:

> "It is * * * fundamental that in determining whether to withdraw an allegation from consideration by the jury it is not the function of the court to weigh conflicting evidence. If an allegation is supported by any competent evidence, including the testimony of a single witness, it is the exclusive function of the jury to decide whether to believe that testimony, despite

the fact that all other witnesses may have testified to the contrary."

*See also Manning v. Helbock,* 135 Or 262, 266, 295 P 207 (1931) ("Plaintiff was clearly entitled to have his theory submitted to the jury if there was any competent evidence to support it."); *Anderson v. Wallowa National Bank,* 100 Or 679, 700, 198 P 560 (1921) (same); *Woods v. Wikstrom,* 67 Or 581, 588-89, 135 P 192 (1913) (stating same test for motions for nonsuit). Only when there is no evidence to support an element may the claim be withdrawn from the jury's consideration.[3]

The same rule obtains in criminal cases.[4] In *Latshaw v. Territory of Oregon,* 1 Or 140, 142 (1855), the court wrote:

"Whenever there is *any* evidence tending to prove a fact within the issue, the jury must pass upon it; and it is error for the court to instruct them that such a fact does or does not exist, that it has or has not been proven. But when there is *no* evidence tending to prove a fact, and counsel seek by instructions or argument to submit the question to the jury, the court, in its discretion, may very properly say to the jury that no such question can arise in the case. The court is not bound to give instructions which, although as abstract propositions of the law may be correct, yet with reference to the case made are irrelevant. Such instructions can only serve to embarrass the minds of the jury by burdening their deliberations with the considerations of questions of fact, and the application of principles of law that are foreign to the issue they have sworn to try. We think there was *no* evidence given to the jury that an 'assault was made.' " (Emphasis in original.)

---

[3] As we said in *Wootten v. Dillard,* 286 Or 129, 136, 592 P2d 1021 (1979):

"We conclude that we are unconcerned with the quantum of evidence. Our concern is only with the existence of evidence which, if accepted as being true by the trier of fact, would establish [the fact in question]."

[4] In *State v. Pender,* 72 Or 94, 142 P 615 (1914), the court even used a civil procedure statute in a criminal case to test whether the case should have gone to the jury. Section 183, L.O.L., stated that "A cause not sufficient to be submitted to a jury, is one, where it appears that if the jury were to find a verdict for the plaintiff, upon any or all of the issues to be tried, the court ought, if required, to set it aside for want of evidence to support it." The *Pender* court found the evidence sufficient to submit the case to the jury, though some of it was conflicting, perhaps because of Article VII (Amended), section 3, of the Oregon Constitution. As this court noted in *Woods v. Wikstrom,* 67 Or 581, 588-89, 135 P 192 (1913), because that provision decrees that a jury verdict cannot be set aside unless there is no evidence to support it, it follows that the only species of "cause" insufficient to be submitted to a jury under Sec. 183, L.O.L., is one for which the record contains no evidentiary support. 67 Or at 588.

*See also State v. Newlin,* 92 Or 589, 594, 182 P 133 (1919) ("A party is entitled to have his theory of the case presented to the jury if there is evidence to support such theory.").

The rationale for this rule is twofold. First, Article VII (Amended), section 3, of the Oregon Constitution decrees that a fact decided by a jury may not be reexamined unless the reviewing court can affirmatively say that there is no evidence to support the jury's decision. A corollary to the provision is that if there is any evidence to support each element of a theory for which a party contends, the theory must be submitted for the jury's consideration, no matter whether the judge is persuaded. *Wootten v. Dillard,* 286 Or 129, 136, 592 P2d 1021 (1979); *Shepler v. Weyerhaeuser Company,* 279 Or 477, 483-84, 569 P2d 1040 (1977).

Even without the constitutional provision, the jury's role as the factfinder would dictate that it should be permitted to consider any theory for which the record contains some evidence, if there is a conflicting theory, or if the evidence itself is in conflict. That is because it is the jury's task, not the court's, to weigh evidence, judge the credibility of witnesses and the reliability of their testimony, and to resolve conflicts in the evidence. *See, e.g., Shepler v. Weyerhaeuser Company, supra.*

Though this case concerns evidence introduced in support of an affirmative defense, rather than a claim or a charge, the test is the same. By raising an affirmative defense, the defendant seeks to avoid criminal responsibility for acts that might otherwise constitute a crime. If the defense is established, the defendant is not guilty of a crime, even if he committed acts that otherwise would constitute a crime. But a defendant must prove certain facts to establish the defense, just as a plaintiff must establish as a factual matter the elements of a civil claim or the state must establish as a factual matter the elements of a criminal charge.[5]

---

[5] ORS 161.055(2) imposes on the defendant the burden of proving by a preponderance of the evidence the elements of any defense designated as an "affirmative defense" by the Oregon Criminal Code of 1971. Though the defense at issue did not exist until 1975, *(former* ORS 487.560(2)), ORS 161.035(2) decrees that:

"Except as otherwise expressly provided, or unless the context requires otherwise, the provisions of chapter 743, Oregon Laws 1971, shall govern the construction of and punishment for any offense defined outside chapter 743, Oregon Laws

A defendant's task, therefore, in establishing an affirmative defense is the same as that facing a plaintiff on a civil claim: to introduce enough evidence, first, to get to the jury, and second, to meet the requisite burden of proof in the judgment of the jury. Because the task is the same, it is proper to use the same test to decide whether the evidence is sufficient to require that the defense be submitted to the jury. We hold that, as in civil cases, an affirmative defense to a criminal charge may be withdrawn from the jury's consideration only if there is no evidence in the record to support an element of the defense.

■        Before describing the evidence, we must decide whether the defendant must prove after the fact that an injury or an immediate threat of injury to a human being actually existed or whether one of them appeared to exist. The word "threat" implies something that has not yet actually happened and requires a driver who attempts to rescue someone from a "threat of injury" to make a judgment about the existence of that threat. Since it would often be a matter for speculation whether a threat of injury "actually" exists, the "actual" test is inconsistent with making the defense available to someone who drives to avert a threat of injury.

Furthermore, the "actual" test is inconsistent with the reason for the existence of the defense. Presumably the defense exists because the legislature recognized that there are circumstances in which it is preferable that a person drive to effect a rescue than to refrain from driving because of the suspension.[6] Requiring defendant to establish after the fact that an injury or threat of injury "actually" existed might dissuade a suspended driver from taking action to avert an emergency if the driver believes, but is uncertain, whether the

---

1971, * * * *as well as the construction and application of any defense to a prosecution for such an offense.*" (Emphasis added.)

Because ORS 161.055 is itself a "provision[] of Chapter 743, Oregon Laws 1971," it appears that it governs the construction of the later statute, and defendant does not challenge the validity of ORS 161.055.

[6] The generalized necessity defense, ORS 161.200, to which the affirmative defense at issue is somewhat similar, expressly requires a similar balancing. To make out the defense, it must be established (inter alia) that "[t]he threatened injury is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding the injury clearly outweigh the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue."

injury or threat of injury exists. Given its reason for establishing the defense, encouraging rescue, we doubt that the legislature intended that the driver should be forced to make that guess at his, and possibly the threatened person's, peril.[7]

The word "injury" presents problems for statutory interpretation. We believe that the legislature probably had in mind cases where the driver was actually present at the scene of injury or threat and could perceive the danger with the driver's own senses. Even then a driver might not know what precisely was intended by the legislature. Did the legislature mean injury from external trauma? From internal trauma such as hemorrhaging from a severe coughing spell or a heart attack (myocardial infarction) from arteriosclerosis? Blocking of the airway from attempting to swallow poorly chewed food? These various examples are not before us in this case but may arise in other cases.

The legislature should clarify the matter, but a court must do so when a case is presented. The legislature may have intended "physical injury" as that term is defined in ORS 161.015(6):

" 'Physical injury' means impairment of physical condition or substantial pain."

We do not know that, however, but until there may be legislative clarification, the interpretation of the term is for the court and not for the jury.

This defendant was not present where an injury or threat thereof occurred. We believe that whether present or not, a defendant's perception of circumstances that constitute an injury or immediate threat thereof has to be reasonable in all the circumstances. We conclude that a defendant himself must reasonably have believed there to be such an injury or threat. To establish that reasonable belief, the defendant must be able to point to evidence in the record from which the jury could find that the defendant actually believed that injury or threat thereof existed and that the information available to the defendant was such as would cause a reasonable person so to believe.

---

[7] Requiring such proof would also lead to the ridiculous result of denying a person the protection of the defense if the defendant rescued someone who appeared injured, and would have appeared so to anyone, but ultimately turned out to be uninjured.

Obviously, whether a defendant had a reasonable belief, as above described, must be a question for the jury if there is evidence in the record from which the jury could so conclude.

Besides establishing that reasonable belief, this affirmative defense requires a defendant to show that the urgency of the circumstances made it necessary for the defendant to drive. Again, whether there was such urgency is to be tested by the defendant's reasonable belief, and defendant's reasonable belief must be established by evidence of the same criteria as that concerning the reasonableness of a defendant's belief that there was injury or threat thereof. In this respect, both the magnitude of the injury or threatened injury and the interval of time necessary to avert or remedy the injury or threat are circumstances to be considered by the jury in determining whether "urgency of the circumstances made it necessary for the defendant to drive." ORS 811.180(1)(a).

The state argues that the statute will have no force if the defendant's own belief about the situation controls, because the defendant will simply lie about that belief. That eventuality is no more problematic than it is in other instances in which the defendant's state of mind is at issue. Obviously, the jury must be convinced that the defendant had the requisite belief, and it can look to external indicators to test the strength of the defendant's assertion.

■ We now turn to the evidence, and, because the court took the defense from the jury, we must evaluate the facts in the "light most favorable to the establishment of the facts necessary to require [submission of the case to the jury.]" *Carter v. Mote,* 285 Or 275, 279, 590 P2d 1214 (1979). The circumstances were as follows. Defendant received a call at 7:00 a.m. from a friend of his, Sue Bowling. He testified that before hanging up, she said only, "Dick, come and get me and the kids. Hurry as fast as you can." Defendant testified that she sounded "frantic" and "scared to death." When he called back to find out what was wrong, a male voice unknown to him answered saying that his friend was "indisposed." Defendant testified that Bowling knew that his driver's license had been suspended and that he believed that she would not have asked him to drive unless something serious had happened.

Defendant testified that he called two people trying

to find someone to drive him to Bowling's, but that one person's car was in the shop and one person was unavailable. Because of his financial straits, defendant testified, he could not afford cab fare to Junction City where Bowling lived, so he finally decided to drive himself. On the way he stopped at another friend's house, hoping that someone there could drive him the rest of the way, but the person was not home.

Unbeknownst to defendant, the source of Bowling's anxiety had been the police, who had broken down the door and entered her house as part of the execution of a search warrant. Bowling and her children were handcuffed and held in the living room for about an hour. After determining that she and her children were not implicated in any illegal activities, the police told her they could leave. Not having transportation, and being unable to depend upon another friend to respond quickly, she called defendant. Upon his arrival at the house, the police stopped defendant and eventually learned that his driving privileges had been suspended. They cited defendant for driving while suspended, a felony in defendant's case.[8]

The police officer who stopped defendant at the door noted in her report that defendant told her that Bowling had called him and asked him to respond "immediately." The officer also testified that defendant told her that he thought that perhaps Bowling and her boyfriend had been having an argument.

Bowling testified that she was "scared to death" and that she was "very upset" when she called defendant, and that she "didn't give him any time to really ask [her] what was wrong," but she just told him that she wanted him to come and take her and the children away.

We hold that this evidence was sufficient to raise a jury question on both elements of the defense. The state argues that because defendant had no idea what the problem was, he could not have believed that there was a threat of injury. But a jury could find that Bowling's manner would raise a belief that she or one of her children was in grave

---

[8] Because defendant's driver's license was suspended for driving under the influence of intoxicants, his driving constituted a felony rather than a misdemeanor. ORS 811.182(3)(g).

trouble, one species of which certainly comprises an injury. When defendant called Bowling back, a strange man answered saying she was "indisposed," an answer that a jury could find might lead defendant to believe that Bowling was in danger of injury at the hands of the strange man. Also, there was evidence that defendant believed that perhaps Bowling and her boyfriend were having an argument, which a jury could find might cause defendant to think Bowling was in danger of injury.

A jury could find that the perceived threat was immediate from the evidence that Bowling told defendant to "hurry" and from the police officer's notation in her record that defendant had told her that Bowling asked him to respond "immediately."

A jury could find that defendant believed that the circumstances required him to drive, since there was evidence that he tried but was unable to find a substitute driver with the capacity to respond immediately, and there was evidence that he could not afford cab fare.

There was evidence on both elements of the defense; therefore, we hold that the trial court erred in withdrawing the defense from the jury's consideration. The decision of the Court of Appeals is reversed. The judgment of the trial court is reversed and the case is remanded to that court for a new trial.