Argued and submitted May 8, affirmed October 3, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# MARK ANDREW HONZEL,
*Appellant.*

# D9903291M; A109407

33 P3d 346

Robert A. Callahan filed the brief for appellant.

Ryan P. Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Van Hoomissen, Senior Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals his conviction for unlawful possession of a firearm. ORS 166.250.[1] He assigns error to the trial court's denial of his motion for acquittal and to the trial court's refusal to give a requested jury instruction. We affirm.

The following facts were established in the state's case-in-chief at trial. Defendant was stopped for a speeding violation while riding his motorcycle. During the stop, the officer noticed ammunition in a partially opened fanny pack around defendant's waist. The officer asked defendant if he had a gun with him, and defendant replied that he did. The officer asked to hold the gun for safety purposes during the stop. Defendant removed the weapon that had been concealed in the fanny pack and gave it to the officer. While checking on the status of defendant's driver's license, the officer ascertained that defendant did not have a concealed weapons permit. After informing defendant of his *Miranda* rights, the officer asked him why he had the gun. Defendant

> "said that he'd left earlier in the evening to go shooting at the gun range at Delta Park and before he got there, he stopped at a friend's house, and then he went to where he works in Vancouver, Washington and by the time he was done at his work place, the gun range had closed, so he came home."

After the stop, defendant was charged with unlawful possession of a firearm, ORS 166.250(1)(a), and the matter went to trial.

At the close of the state's evidence, defendant moved for a judgment of acquittal, arguing that the state had failed to prove that the exception to ORS 166.250(1)(a) in ORS 166.260(2)(a) did not apply to defendant. ORS 166.260(2) provides, in part:

---

[1] ORS 166.250 provides, in part;

"(1) Except as otherwise provided in this section, ORS 166.260, 166.270, 166.274, 166.280, 166.291, 166.292 or 166.410 to 166.470, a person commits the crime of unlawful possession of a firearm if the person knowingly:

"(a) Carries any firearm concealed upon the person[.]"

> "Except for persons who are otherwise prohibited from possessing a firearm under ORS 166.250(1)(c) or 166.270, ORS 166.250 does not apply to or effect:
>
> "(a)    *Members* of any club or organization, for the purpose of practicing shooting at targets upon the established target ranges, whether public or private, while such members are using any of the firearms referred to in ORS 166.250 upon such target ranges, or while *going to and from* such ranges." (Emphasis added.)

The trial court ruled that there was nothing in the record at that point that would establish that defendant was a member of any shooting club and denied the motion. Defendant then presented his case-in-chief and offered his membership card in a shooting club into evidence. He testified that he had left home intending to go eventually to the shooting range, but that he had not gone to the range because of the lateness of the hour.[2] His motion for a judgment of acquittal was not renewed at the close of defendant's evidence.

Before the jury was instructed, defendant's counsel requested the giving of a jury instruction pursuant to ORS 166.260(2)(a). The trial court ruled that the evidence did not support the giving of the instruction. The trial court explained,

> "Under your argument, any day he wanted to go to work and plan on that day going to the firing range, he would be able to carry a concealed weapon without a permit, as long as he just felt, well, today I'll go shoot so I'll carry this with me or, perhaps, even tomorrow I'll go shoot. But I plan on going up, I'll just carry it with me until I happen to get there tomorrow."

Defendant was found guilty by the jury and appeals.

■    On appeal, defendant raises two assignments of error regarding the court's denial of his motion for a judgment of acquittal and the denial of his request for the jury instruction under ORS 166.260(2)(a). As to the denial of the motion for acquittal, defendant argues that:

---

[2] Defendant's testimony in that regard differed from the officer's in only one respect. He testified that he went to his workplace and then to his friend's house before heading home.

"In a prosecution for Unlawful Possession of a Firearm (ORS 166.250), the accused has a right to have the jury told of all the relevant law relating to the defense theory of the case. This includes the statutory exemption to criminal liability for members of a club or organization while traveling to or from an established target range (ORS 166.260(2)(a)[)], when there is evidence produced establishing the exemption. The state produced evidence of the applicability of the exemption in its case-in-chief. Under these unique facts, the state has the burden to disprove, in its case-in-chief, the exemption's application to the defendant, beyond a reasonable doubt. The state failed to meet this burden."

Defendant's argument assumes that the state has the burden of disproving the applicability of ORS 166.260(2)(a) in its case-in-chief. The state must prove each *element* of a criminal offense beyond a reasonable doubt. ORS 136.415. Our first inquiry is whether ORS 166.260(2)(a) is an element of the offense of unlawful possession of a firearm under ORS 166.250. In *State v. Vasquez-Rubio*, 323 Or 275, 917 P2d 494 (1996), the Supreme Court employed a useful framework in determining when a statutory provision is an element of an offense. In that case, the statute in question, ORS 166.272, provided that a person committed the crime of unlawful possession of certain weapons if the person "knowingly possesses" one of the listed weapons that is "not registered as required under federal law." The court first turned to the text of the statute, and determined from the text that the crime had at least two elements: (1) knowing possession, and (2) unregistered status of the weapon. It then applied the rule of *State v. Tamler & Polly*, 19 Or 528, 25 P 71 (1890).[3] That rule provides that an element of a crime exists when the fact

---

[3] In *Tamler & Polly*, the defendant was charged with violating certain provisions of the Act of 1889, that prohibited the selling of certain liquors without a license. Section 11 of that Act provided that, "[n]othing in this act shall be so construed as to apply in any manner to incorporated towns and cities of this State." The court held that it was not necessary to allege in the indictment that the sale did not take place within an incorporated city, explaining:

"The exceptions should be negatived only when they are descriptive of the offense, or a necessary ingredient of its definition; but when they afford matter of excuse merely, they are matters of defense and therefore need not be negatived in the indictment." *Tamler & Polly*, 19 Or at 530.

to be proved is necessary to the definition of the offense as enacted by the legislature.

The court turned to the language of ORS 166.272 and, in examining the text and context of that statute, noted that the phrase "not registered as required under federal law" is contained in the same sentence as the other elements of the offense in ORS 166.272. The court contrasted ORS 166.272 with ORS 166.250 and ORS 166.260(1)(a),[4] pointing out that the legislature knows how to designate defenses or affirmative defenses by labeling them as such, or by setting forth the limits of the statute's reach, or by using words of limitations such as "except that," "however," or "provided that." It then concluded that the lack of federal registration was an element of the offense for which the state bore the burden of proof.

Applying the same methodology to the language in issue in this case, we inquire whether the wording in ORS 166.260(2)(a),

> "ORS 166.250 does not apply to or affect * * * members of any club or organization * * * while such members are using any of the firearms referred to in ORS 166.250 upon such target ranges, or while going to and from such ranges,"

constitutes a necessary element of unlawful possession of a firearm. The elements of ORS 166.250(1)(a) are (1) the carrying of a certain type of weapon; (2) that is concealed upon the person; (3) the knowledge of that fact; and (4) the absence of a license to carry a concealed firearm. Those elements can be proved without regard to whether a person is a member of a shooting club going to and from a target range. When viewed in context, ORS 166.250 establishes the reach of the statute, and ORS 166.260 qualifies or limits that reach based on specific circumstances. We conclude that ORS 166.260(2)(a) does not provide an element that is necessary to the definition of unlawfully carrying a concealed firearm.[5]

---

[4] ORS 166.260(1)(a) says that ORS 166.250 "does not apply" to certain classifications of individuals, such as law enforcement officers.

[5] The way that ORS 166.260(1)(b) qualifies the reach of ORS 166.250 is similar to the way that the reach of the statute in *Tamler & Polly* was limited by another statutory provision.

■ We turn then to the issue of whether the defense under ORS 166.260(2)(a) is a defense that the state must disprove, or a defense that defendant must prove. ORS 161.055 provides:

"(1) When a 'defense,' other than an 'affirmative defense' as defined in subsection (2) of this section, is raised at a trial, the state has the burden of disproving the defense beyond a reasonable doubt.

"(2) When a defense, declared to be an 'affirmative defense' by chapter 743, Oregon Laws 1971, is raised at a trial, the defendant has the burden of proving the defense by a preponderance of the evidence.

"(3) The state is not required to negate a defense as defined in subsection (1) of this section unless it is raised by the defendant. 'Raised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."

Thus, we inquire next whether the defense under ORS 166.260(2)(a) is governed by subsection (1) or (2) of ORS 161.055. ORS 166.260(2)(a) is not one of the affirmative defenses declared by Oregon Laws 1971, chapter 743. However, ORS 161.035(2) authorizes the application of ORS 161.055 to statutes defining offenses and defenses outside those declared by chapter 743. *See State v. Brown*, 306 Or 599, 604 n 5, 761 P2d 1300 (1988).

In *Vasquez-Rubio*, 323 Or at 281, the court said:

"[T]he legislature can provide for a defense or an affirmative defense by using words of limitation such as 'except that,' 'however,' or 'provided that.' * * * [I]t is clear that, when the legislature enacts a criminal statute, it knows how to create a defense or an affirmative defense. The legislature did not, however, provide for an affirmative defense when it enacted ORS 166.272. The statute does not provide that 'it is an affirmative defense' to unlawful possession of a machine gun if the gun is registered as required under federal law."

Similarly, there is no "affirmative defense" language in the text or context of ORS 166.260(2)(a). However, we need not decide in this case whether subsection (1) or (2) of ORS

161.055 applies because of the circumstances and timing surrounding defendant's motion. Assuming without deciding that ORS 161.055(1) governs the defense in ORS 166.260(2)(a), ORS 161.055(3) provides that the state is not required to negate a defense until the defendant gives notice of an intent to raise the defense. The statute provides two ways in which a defendant can give notice of a defense that the state must disprove: (1) by providing notice in writing to the state before trial, or (2) by presenting affirmative evidence supporting the defense in the defendant's case-in-chief. Defendant did not provide notice in writing before trial that he intended to rely on the provisions of ORS 166.260(2)(a).[6] Insofar as the record shows, he raised the issue for the first time when he made his motion for a judgment of acquittal at the close of the state's case-in-chief. The state had no burden to disprove the defense in its case-in-chief in the absence of pretrial notice. The trial court could not have erred by denying the motion.

■ As to the trial court's denial of defendant's requested jury instruction, we review such a denial "in the light most favorable to the establishment of the facts necessary to require submission of the case to the jury." *Brown*, 306 Or at 607, *quoting Carter v. Mote*, 285 Or 275, 279 590 P2d 1214 (1979). We will uphold the trial court's denial only if "there is no evidence in the record to support * * * [the instruction]." *Brown*, 306 Or at 605. As stated above, the record contains evidence of defendant's membership in a target shooting club at the time that the jury instruction was requested. However, defendant testified that he was not going to the shooting club or coming home from it at the time that he was stopped. Nonetheless, defendant's counsel argued to the trial court and reiterates on appeal:

> "Given the antiquity of this law,[7] it's my position that such minor deviations from the normal path of daily travel were anticipated. Would he have deviated in a prohibited manner if he were to stop and get gasoline on his way to or from

---

[6] Defendant did provide pretrial written notice of his intent to raise the choice of evils defense, and also requested Uniform Criminal Jury Instruction (UCrJI) 1103 on that defense. His request for a jury instruction on the provisions of ORS 166.260(2)(a) did not arise until after the close of the evidence.

[7] The substance of ORS 166.260(2)(a) was first enacted in 1925. *See* Or Laws 1925, ch 260, § § 5, 6.

the target range? I don't think you'd say that would disqualify him. In this circumstance, * * * I don't think [defendant's] actions were unreasonable. And in reading the law, I think they tailor within the exception that the legislature has carved out for members of organizations who possess, own and use firearms."

Defendant's argument presents an issue of legislative intent. Did the legislature intend the exception in ORS 166.260(2)(a) to apply to defendant's circumstances? We first examine the text and context of the statute. The words most significant to the issue are the words in the statute "or while going to and from such ranges." ORS 166.260(2)(b) provides context. Under subsection (2)(b), ORS 166.250 does not apply to or affect:

"Licensed hunters or fishermen while engaged in hunting or fishing, or while going to or returning from a hunting or fishing expedition."

The words "going to and from such ranges" or "returning from" in these statutes have ordinary meanings that are commonly understood. For purposes of this case, they describe conduct that has its beginning point at a statutorily designated place of activity (the hunting or fishing grounds, or the target range.) Unfortunately for defendant, the conduct permitted by ORS 166.260(2)(a)—going from the target range with a weapon concealed upon his person—never occurred. The fact that defendant intended to go to and depart from the target range when he left his residence with a concealed handgun and the asserted "reasonableness" of his conduct is of no consequence to his responsibility under the statute. Once he decided to possess a handgun that was concealed on his person at a time when he was not going to or coming from the target range,[8] he lost the protection afforded to him by ORS 166.260(2)(a). To hold otherwise would require us to add an exception to ORS 166.250 that does not exist, in contravention of ORS 174.010.[9] Consequently, the trial court did

---

[8] We do not decide whether the possession of a concealed handgun while making a stop or a detour en route to or from a target range falls within subsection (2)(b).

[9] ORS 174.010 provides, in part, that, "in the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein [and] not to insert what has been omitted."

not err in refusing to instruct the jury under ORS 166.260(2)(a).

Affirmed.