Argued June 28; reversed July 9, 1935

STATE *v.* LUCKEY ET UX.

(46 P. (2d) 1042)

*Pat H. Donegan,* of Burns, for appellants.

*Francis T. Wade,* of Salem (I. H. Van Winkle, Attorney General, and J. M. Blank, District Attorney, of Canyon City, on the brief), for the State.

CAMPBELL, C. J. The defendants were indicted, tried and convicted on a charge of burglary not in a

dwelling by the circuit court for Grant county and sentenced to a term in the penitentiary. From this judgment, they appeal.

At the close of all the evidence in the cause, defendants' counsel moved the court for a directed verdict of not guilty. This motion was denied and its denial is the only assignment of error presented to this court.

The evidence discloses that in the month of June, 1934, defendant Norman Luckey, the husband of defendant Marion Luckey, rented a cabin from one C. E. Lyon who was conducting an auto camp in Grant county near Canyon City. Defendants occupied this cabin something over six weeks and then left without notifying Mr. Lyon or paying him the rent due. They went to Baker where Mr. Luckey obtained employment in a garage at his trade as an auto mechanic. While defendants were at Canyon City, Mr. Luckey worked for the state highway department. About four days after they left, Mr. Lyon took what effects that were left in the cabin and stored them in his gas and oil service station located on the campground. In this station were kept for sale certain auto accessories and other goods. On July 28, 1934, Mr. Luckey gave his wife some money and sent her to Canyon City with instruction to settle up for the rent owed Mr. Lyon and also to go to the town of Burns and get some mechanic's tools which were stored there. On her arrival at Canyon City, she was informed that a warrant had been issued for the arrest of herself and husband for absconding from the auto camp without paying their rent. It appears that the defendants also owed Harlan Hayes a small bill for rent of a cabin at John Day contracted sometime previously. She was then persuaded to go to Burns, get her husband's tools, pledge them to Mr. Lyon as

security for the delinquent rent owed to him and Mr. Hayes, and they would not have the warrant of arrest served. On her return from Burns, she was induced to sign the following writing:

"It is hereby agreed that C. E. Lyon is to hold household effects and mechanical tools belonging to Norman Luckey and his wife, such household effects and mechanical tools to be held as security for a rental bill of $28.27 owing to said C. E. Lyon from Norman Luckey and wife. In case the above mentioned is not redeemed within (20) twenty days, the said C. E. Lyon is to have full authority to sell all said household effects and mechanical tools and apply the proceeds in settlement of his claim against Norman Luckey and wife. In addition the above household goods and mechanical tools also secure a claim of H. B. Hayes of John Day for $11.00 under the above terms.

C. E. LYON,
NORMAN W. LUCKEY,
By Mrs. N. W. Luckey."

"Witness H. B. Hayes."

She then turned over the tools and household effects to Mr. Lyon.

Among the tools was a set of micrometers of the value of upwards of $50. The balance of the tools were of small value. Mrs. Luckey then returned to Baker where she informed her husband that she did not have enough money to pay the bills of Lyon and Hayes and could not get her goods. She concealed from her husband the fact that she pledged his tools, by informing him that she was unable to get them in Burns. Sometime later she told her husband that she had left them with Lyon. She then consulted an attorney at Baker and told him the facts in the case, but failed to disclose that she had signed her husband's name to the instrument pledging the tools or that she had pledged her

husband's property. The lawyer informed her that Mr. Lyon had no lawful right to retain her husband's tools or goods, and this advice she passed on to her husband.

On September 11, 1934, defendants went to Canyon City and to Mr. Lyon's service station where the articles were stored. At about 9:30 p. m. on said day, after Mr. Lyon had closed the station for the night, Mr. Luckey entered the building by prying open a window and took therefrom a part of his property, leaving the most valuable part of it there. There was some evidence to show that the micrometers, the most valuable part of the tools, were not in the service station at the time the Luckeys entered, but were stored in Mr. Lyon's house. They then returned to Baker where they were arrested sometime later by the state police.

Defendants admit that Mr. Luckey entered the building by prying open the window and did take a part of his property.

The only question presented is: Did the evidence disclose that Mr. Lyon had either a general or special interest in the goods taken, that entitled him to the possession thereof?

There is no contention made that Mr. Luckey, at the time of breaking and entering, had any intention of taking any other goods than those he did take.

The theory of the state is that the defendants were guilty of burglary by virtue of entering the building with the intent to take the said goods.

The statute under which the indictment was brought reads as follows:

"If any person shall break and enter any building within the curtilage of any dwelling house, but not forming a part thereof, or shall break and enter any

building or part thereof, booth, tent, railroad car, vessel, boat, or other structure or erection in which any property is kept, with intent to steal therein, or to commit any felony therein, such person shall be deemed guilty of burglary, and upon conviction thereof shall be punished by imprisonment in the penitentiary not less than two nor more than five years.'' Oregon Code 1930, § 14-311.

■ In order to convict defendants, it was necessary for the state to prove beyond a reasonable doubt: (1) That defendants broke and entered a building; (2) that there was property kept in said building; (3) that, at the time of the breaking and entering, defendants had an intent to steal therein or commit some felony therein. It was also necessary to prove the time and the venue.

Defendants admit the breaking and entering and they also admit that there were goods kept in said building, but deny any intent to steal. They admit that they intended to take and did take that portion of the property which they claimed was their own.

Mr. Lyon had no right to retain possession of said goods by virtue of any statutory lien. He had no right to the possession of Mr. Luckey's goods by any authorized pledge thereof. At the time he took possession of the goods under the above quoted instrument, he knew that he was dealing with one who was not the owner thereof. It was his duty to know the extent of the authority of the one with whom he was dealing.

■ There is no testimony that Marion Luckey represented to Mr. Lyon that she had any authority to pledge said goods or any part thereof. The marriage relation of itself gave her no authority to dispose of her husband's goods without his consent. The uncontradicted

testimony is that she was directed by her husband to get the goods and the tools and bring them to Baker. In a criminal case in the face of such undisputed testimony, the jury should not be permitted to infer that she may have been her husband's agent and authorized to pledge these goods for any purpose.

There is no testimony that Marion Luckey owned any part of the goods taken from the building. Evidently, Mr. Lyon did not consider that Marion Luckey had any interest in any of those goods for he did not require her signature to the instrument by which the pledge was supposed to have been made. He required her to sign her husband's name to the instrument and to designate the fact that the husband's name was signed by her. It needs no citation of authority to sustain the principle that a man can not be guilty of stealing his own goods if he is also entitled to the possession at the time of the taking.

The conduct of defendants may not have been up to a high standard of honesty and business ethics. They, like every one else, should pay their just debts. Yet they should not be sentenced to the penitentiary for a failure to do so. The motion for a directed verdict of not guilty should have been granted.

The judgment will be reversed and the cause remanded with instructions to enter an order discharging the defendants and exonerating their bondsmen.

It is so ordered.