## Lanter v. Commonwealth.
### (Decided March 26, 1937.)

W. L. KASH for appellant.

HUBERT MEREDITH, Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellant was charged by indictment with the offense of unlawfully, willfully, and feloniously committing a violent assault with an offensive weapon upon another and demanding from another in a violent and forcible manner money or property of value. The descriptive portion of the indictment then using the same language as above, alleged the offense to have been committed against Mr. and Mrs. Henry Rader.

Appellant on trial was found guilty and his punishment fixed at confinement in the penitentiary for twenty-one years. He appeals.

The evidence may be best presented by giving the appellant's version of the incident which led up to his conviction, as detailed by him and his witnesses. He says that on the day of the occurrence he learned that Mr. Rader wanted to buy some coal. Around 8 p. m. appellant with two companions went to Rader's home and asked Mr. Rader if he wanted to buy some coal and Rader said he would "take a dollar's worth." Appellant and companions then made several trips to a nearby railroad yard, on each trip taking back large blocks of coal which they placed in Rader's yard. After delivering the coal, they returned to Mr. Rader's home,

avowedly for the purpose of collecting for the coal. Appellant's two companions stood in or near the yard while appellant went to the front door, knocked, and went in. After entering the door, appellant demanded his pay of $1 for the coal. Mr. Rader replied that he did not have a dollar. Appellant insisted on forthwith pay. Mr. Rader said he had no change. Appellant urged Mr. Rader to put on his trousers and go get the change. Mr. Rader finally insisted that he had no money and told appellant to come back the next morning. Appellant did go back the next morning, and Mrs. Rader met him and told him to wait and she would get the money. Instead, she called a policeman who came and arrested appellant.

The morning after the delivery of the coal a railroad detective came to the Rader home to see about the coal. He says there was five or six dollars' worth, and while he does not identify the coal, he says the railroad yard was about 75 yards from the Rader home. Appellant and his witnesses vehemently deny any assault, attempt at assault, or display by appellant of a weapon of any sort.

Mr. and Mrs. Rader testified for the commonwealth and agree substantially as to what occurred, though disagreeing with appellant and his witnesses as to what happened on either visit. Mr. Rader said that shortly after dark on the night in question an unknown man came to his house and asked him if he did not need some coal. Witness replied that he did not know, but asked the would-be seller where it was, or where he would get it, and appellant replied that it did not make any difference just so he delivered the coal. The seller then left and Mr. Rader retired. Later, and after 10 o'clock, appellant returned and knocked on the door. Mr. Rader went to the door and appellant, over the protest of Mr. Rader, came into the house; said that he had delivered the coal and demanded his pay. Mr. Rader asked him where he had gotten the coal and appellant replied with an oath that it made no difference, "I want my pay for it." Rader then said to appellant, "You got that coal from the L. & N. yard and I want it out." By this time Mrs. Rader grabbed a broom and appellant drew a razor and told Mr. Rader that he would cut his head off, and demanded that Mr. Rader put on his trousers. Mr. Rader said appellant held him with one hand and searched his trousers, but he added

"to see if I had a knife." Mr. Rader told appellant that he had no money, but that the old woman had a dollar or two and she said, "I am not going to get it." Finally Mr. Rader, with the assistance of appellant's companions, persuaded appellant to leave, the witness saying, "If I had a dollar I would give it to you; I would be glad to give it to you to get rid of you. I haven't no money."

On cross-examination Mr. Rader insisted that he made no trade for coal and further that nothing was said about the payment of a dollar until the second trip made by appellant to his home. However, after much pressure the following questions were asked and answers made:

"Q. This man that came over there at 8:30, or whoever came, you made an agreement with them to give them a dollar to get you some coal? A. No sir, I didn't, wasn't anything said about a dollar. I told him I wouldn't pay him until he brought the coal."

"Q. You promised him a dollar, and he brought the coal back and asked for the dollar? A. I reckon it was the same man. He came the next day."

The witness, later brought back for further cross-examination was asked if he had not stated on the examining trial that the first time they came to his house that night he agreed with them to pay a dollar if they would get a dollar's worth of coal, and he replied, "I never told them to get no coal." When asked the following questions he made these answers:

"Q. Didn't you testify in substance that you agreed with them to pay them a dollar? A. He said he wanted to sell me a dollar's worth of coal. Do you understand it now? I am telling you he said he wanted to sell me a dollar's worth of coal.

"Q. I am asking you what you said down here before Judge Noland. Did you swear if you first said he would go get you a dollar's worth of coal and you told him you would pay him a dollar, or that in substance? A. I disremember whether I did or not."

The testimony of this witness was, to say the least of it, somewhat evasive; neither clear nor satisfactory.

We note that on cross-examination he says that he could not, or did not see the coal until the next morning, though in his direct evidence he said that when appellant came to the house the second time he had said to appellant that if the railroad "come along here, what will they think; over a ton of coal laying there. I guess there was six dollar's worth of coal. Well, I let it lay there until the next day, and the railroad people did come looking for it."

While complaining that the court did not in his instructions give the whole law of the case, appellant insists that the verdict was flagrantly against the evidence, and the result of passion and prejudice. It is argued that from all the proof adduced, the appellant was only attempting to collect from Mr. Rader the sum of $1 which he believed to be due, and which Mr. Rader had agreed to pay him on delivery of the coal. Counsel agrees that the method of collecting, if the method adopted was as outlined by Mr. Rader, was rather severe, but that since there was no proof of an attempt to rob, the question of intent to rob should not have been submitted. Of course, the intent with which a crime is committed, where the intent is of the essence of the crime denounced, as it seems clearly to be under Ky. Stats. sec. 1160, and our previous constructions of that statute, may be inferred from facts. The question here is whether or not any intent to rob is shown, or that intent so to do may be inferred from the proof. If the appellant and his witnesses are to be believed, there was only an intent to collect the debt of $1, perhaps by an unusual and somewhat too forceful method, and the prosecuting witness so testifies as to bear out their testimony to some extent.

The court instructed the jury that if they believed from the evidence beyond a reasonable doubt that appellant "did with an offensive weapon, to-wit, a razor, unlawfully, willfully, feloniously and maliciously assault Rader * * * , or by menace or in or by any forcible and violent manner with felonious intent there to rob Henry Rader * * * ," they should find him guilty as charged in the indictment and fix his punishment by confinement for twenty-one years, or for life, or by death.

The instruction was correct, as will be seen by reference to recent cases in which we have construed the statute to mean that there was one offense denounced,

i. e., robbery or intent to rob by means of either of two methods, by maliciously assaulting with a deadly weapon, or by demanding in a violent or forcible manner money or property of another, both or either to be exercised with intent to rob, or in committing a robbery. Hannah v. Com., 242 Ky. 220, 46 S. W. (2d) 121; Little v. Com., 246 Ky. 805, 56 S. W. (2d) 526; Terrill v. Com., 248 Ky. 613, 614, 59 S. W. (2d) 564.

The court also properly gave an instruction on the lesser offense; common-law assault. We note that the Attorney General suggests that the indictment was defective in so far as it attempted to charge the offense denounced by section 1160, Ky. Stats., and we agree that this is true, but since there was no demurrer, we are not called upon to determine that question. It is, perhaps, true that the indictment stripped of surplusage sufficiently charged the commission of a public offense.

However, it is of grave doubt whether or not the court should have submitted the case under the statute which he closely followed in giving the felony instruction. The crime there denounced is robbery, or attempted robbery by one of the two methods set out in the section. Taking into consideration appellant's proof, and giving the proof on behalf of the commonwealth the strongest possible effect, we find nothing that indicated an attempt to rob. Had there been such intent, it could easily have been carried out. The truth is that the chief witness by his own statements, evasive as they were, justify us in the belief that the expedition was one of collection rather than robbery. Section 1160 does not denounce such offense as was proven here.

It is suggested that reference be had to the cases cited above, if there be intention of prosecuting under section 1160, so that there may be, if thought proper, a reformation of the indictment.

Judgment reversed with directions to grant appellant a new trial consistent with this opinion.