Argued July 23, affirmed October 19, petition for rehearing denied November 23, 1971, petition for review denied January 11, 1972

## STATE OF OREGON, *Respondent, v.*
## NICASIO TRUJILLO, *Appellant.*
489 P2d 977

*Enver Bozgoz,* Klamath Falls, argued the cause and filed the briefs for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, Jacob B. Tanzer, Solicitor General, and G. Eric Lonnquist, Special Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant, a 59-year-old man, appeals from a conviction of armed robbery and subsequent sentence to fifteen years' imprisonment. ORS 163.280. He assigns a number of errors, only two of which we find merit consideration.

Defendant was employed at the Klamath Falls Salvation Army store for over a year prior to the incident which led to his arrest. Like the other employes at the store, he was usually paid on Friday. On the Friday evening of February 6, 1970, the store manager, Mrs. Gheller, told the employes that their checks would be delayed until the following Monday. Defendant evidently was not upset by this for he declined an offered loan from Mrs. Gheller, saying he had "plenty of money" to hold him over for the intervening two days.

On Saturday, February 7, defendant apparently had a change of heart; he appeared at the store three

times asking to speak with Mrs. Gheller about getting "his money." On the first trip, about noon, he argued for about twenty minutes with the cashier, Mrs. Viol, leaving only when he was assured Mrs. Gheller would be in at 1 p.m. He returned at 1 p.m., but Mrs. Gheller had not yet arrived. A similar argument to the first ensued for about ten minutes. Mrs. Viol promised to ask Mrs. Gheller about getting defendant his money as soon as she came in. Between defendant's second and third visits Mrs. Gheller arrived at the store, but departed without leaving any message for defendant. The testimony describing defendant's third appearance is in conflict as to whether or not he argued or "pleaded" extensively with Mrs. Viol before he threatened her with a knife. There is agreement that, threatening with the knife, he opened the cash register and, without counting, took all of the money out, except coins, stuffed it into his pocket and walked out. Police, on information from observers, found him shortly thereafter in a next-door tavern.

At the close of his case, defendant requested that the trial court dismiss the armed robbery charge and submit the case on a lesser included offense. The court refused.

■■ Robbery is an aggravated form of larceny, one element of which is the felonious intent to steal, or "*animus furandi.*" Defendant's defense and motion for dismissal rested on the proposition that he was merely attempting to collect the money owed to him by the Salvation Army store and, consequently, lacked the requisite intent to steal. The question of whether the intent to collect a debt is a defense to robbery has not

been decided in Oregon.① The majority view as stated in an ALR Annotation② is that the intent to collect or secure a debt, if under a bona fide belief that the taker is entitled to possession of the property, negates the requisite *"animus furandi."* The few cases holding contrary are unpersuasive.③ In adopting the majority view, we note in particular the qualification that *the defense is not available when more than is believed due is taken.*④

Defendant testified he had little recollection of the events surrounding the Saturday incident, allegedly because of the adverse effect of two pills he had taken

---

① In State v. Luckey, 150 Or 566, 46 P2d 1042 (1935), a conviction for burglary was reversed on the grounds that a necessary element of that charge, intent to steal, was negated by the fact that the goods were defendant's and he was entitled to their possession. The court said:

"* * * It needs no citation of authority to sustain the principle that a man can not be guilty of stealing his own goods if he is also entitled to the possession at the time of the taking." 150 Or at 571.

② "Robbery—Intent to Collect Debt, 46 A.L.R.2d 1227, 1228, citing as cases in support of the rule: Bauer v. State (1935), 45 Ariz. 358, 43 P.2d 203; see People v. Sheasbey (1927), 82 Cal.App. 459, 255 P. 836; People v. Gallegos (1954), 130 Colo. 232, 274 P.2d 608, 46 A.L.R.2d 1224; State v. Hollyway (1875), 41 Iowa 200, 20 Am.Rep. 586; Lanter v. Commonwealth (1937), 268 Ky. 53, 103 S.W.2d 693 (apparently a prosecution for assault with intent to rob); State v. Brown (1891), 104 Mo. 365, 16 S.W. 406 * * * State v. Carmans (Ohio, 1816) Tappan 65 (97); see Tipton v. State (1923), 23 Okl.Cr. 86, 212 P. 612, 31 A.L.R. 1074 * * * Butts v. Commonwealth (1926), 145 Va. 800, 133 S.E. 764." Edwards v. State, 49 Wis2d 105, 181 NW2d 383, 387, n 1 (1970).

③ These jurisdictions ground their denial of the defense on public policy: that recognition of this defense would lead to rampant use of self-help and its attendant consequences. See, for example, Moyers v. State, 186 Ga 446, 197 SE 846, 116 ALR 981 (1938). This fear appears unfounded in light of the deterrent effect that punishment for lesser included offenses provides.

④ Bass v. State, 151 Tex Crim 172, 206 SW2d 599 (1947); 2 Wharton, Criminal Law and Procedure 250, 251, § 550 (Anderson 1957).

for a headache. He did remember the first visit to the store, but vacillated as to his purpose for going there:

"A. I went to see Helen [Gheller], I wanted to see Helen about some money, I was going to borrow some money from her.

"* * * * *

"A. Well, I was going to get some money from her [Gheller], if I couldn't get mine, I was going to borrow some from her, she used to lend me money."

Some of Mrs. Viol's testimony is supportive of defendant's contention that he was seeking his check rather than a loan; the latter, of course, would be inconsistent with the defense asserted here. She testified:

"A. Well, he asked me for money and I told him that I couldn't give him money. He wanted his paycheck and he thought that he could get it on Saturday, and I told him 'No,' that I don't think that he could get it that day, that we were told that we would be paid on Monday.

"Q. When would you normally have been paid?
"A. Friday.

"* * * * *

"A. He told me that Helen said that he could get paid Saturday."

■ It was established that $17.35 was due defendant from the store. Mrs. Viol testified that defendant took all of the money in the cash register, with the exception of $6 in coins, and that he did not count it as he took it. In response to questions, she said that $51 was taken, but after she so testified an objection was sustained on the ground her knowledge was based on hearsay. The answer was not stricken, nor was the

jury told to disregard it.⑨ The basis for the hearsay objection was that Captain Bawdon, a supervisor, had totalled the sales sheets after the robbery and they showed the amount that was in the cash register. When Captain Bawdon took the stand the district attorney asked him if he had checked the cash register for the amount taken. He answered, "I added our daily sales sheets and found the total of approximately $51 sales to that point." The sheets were not offered as exhibits. An objection was interposed, and after extensive colloquy between court and counsel, mixed with some questions to the witness, the court sustained the objection and the line of inquiry was abandoned. The answer quoted above was not stricken, nor was the jury told to disregard it.⑨ As already noted, the defendant testified that he had plenty of money to hold him over until Monday. The cash found on defendant when he was arrested was an exhibit. It totalled $63.67. From the evidence related above we think that a reasonable inference can be drawn from evidence properly before the court that defendant took more than the sum due him, and that he had no intention of limiting himself to such sum as he took the money during the robbery.

■ The other assignment of error meriting consideration is that the sentence to fifteen years' imprisonment is cruel and unusual. With sincerity defendant asks whether fifteen years' imprisonment for a man 59 years old, where his crime was to take

---

⑨ "* * * When a witness responds to a question before an attorney has had time to object to the inquiry, the proper practice is to move to strike out the answer, unless the court, in sustaining the objection, also directs the jury not to consider the reply given. [If this procedure was not followed] [t]he testimony * * * was not properly eliminated * * *." Sorenson v. Smith, 65 Or 78, 85, 129 P 757, 131 P 1022, 51 LRA (ns) 612 (1913).

money owed to him, in a robbery, after he went a third time to collect it, is not indeed cruel and unusual.

The sentence is well within the limit set by statute. We cannot change it. *State v. Walley,* 1 Or App 189, 192, 460 P2d 370 (1969). Defendant's question may well be taken into consideration by the Board of Parole and Probation.

Affirmed.