Submitted on record and briefs May 7, affirmed October 17, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TROY LATRELL RAMSEY,
aka Troy Catrell Ramsey,
aka Troy Latrial Ramsey,
*Defendant-Appellant.*

Multnomah County Circuit Court
971038330; A126202

173 P3d 142

James N. Varner filed the brief for appellant.

Troy Latrell Ramsey filed the supplemental brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Deits, Judge pro tempore.

HASELTON, P. J.

**HASELTON, P. J.**

This case is before us for a second time, following a remand and resentencing on certain convictions. *State v. Ramsey*, 184 Or App 468, 56 P3d 484 (2002), *rev den*, 335 Or 479 (2003). Defendant, who received a sentence of life without the possibility of parole ("true life") on his conviction for aggravated murder, argues, principally, that, because the state did not seek the death penalty on remand, (1) the trial court erred in allowing the state to present evidence pertaining to defendant's dangerous propensities as well as victim impact evidence at sentencing and (2) the court erred in permitting the state to present rebuttal closing argument.[1] As explained below, we conclude that the evidence of defendant's dangerous propensities was properly admitted as being relevant to the jury's determination as to whether there were "sufficient mitigating circumstances" to warrant imposing a sentence of life with the possibility of parole rather than a true life sentence, *see* ORS 163.150(1)(a); ORS 163.150(3)(a)(A); ORS 163.150(3)(b),[2] and that the victim impact evidence was properly admitted under the reasoning of *State v. George*, 183 Or App 583, 592-93, 54 P3d 619 (2002), *rev'd on other grounds*, 337 Or 329, 97 P3d 656 (2004). We further conclude, consistently with *State v. McNeely*, 330 Or 457, 8 P3d 212, *cert den*, 531 US 1055 (2000), that the court did not err in allowing the state to present rebuttal argument. Accordingly, we affirm.

---

[1] In a supplemental assignment of error, defendant challenges the trial court's denial of his motion for a new trial. We reject that challenge without discussion.

[2] All references to ORS 163.150 in this opinion are to the 2003 version of that statute, which was in effect at the time of resentencing. The statute was amended in 2005, *see* Or Laws 2005, ch 480, § 1, but the sentencing at issue in this case occurred before that amendment.

For reasons that are not apparent, both parties on appeal cite the version of the statute that was in effect before 2001. That version of the statute is materially different from the later version, and, as a result of that difference, neither party on appeal applies the proper statutory analysis to the question concerning the admissibility of evidence of future dangerousness. Nevertheless, it is apparent that, on remand, both the parties and the trial court understood that the 2003 version of the statute applied. On appeal, the parties suggest no reason that, as a matter of statutory or constitutional imperative, that shared understanding was incorrect, and we perceive none.

The circumstances material to our review are undisputed. Defendant was charged with various crimes arising from an episode in which defendant shot the owner of an after-hours club in the course of a dispute about whether another gambler was cheating. *Ramsey*, 184 Or App at 470. Following his original trial, defendant was convicted of six counts of aggravated murder, ORS 163.095, three counts of first-degree burglary, ORS 164.225, three counts of first-degree robbery, ORS 164.415, and one count of felon in possession of a firearm, ORS 166.270. He was sentenced to life without the possibility of parole on the aggravated murder convictions. *Ramsey*, 184 Or App at 470.

Defendant appealed, challenging, *inter alia*, the trial court's failure to instruct the jury on his claim-of-right defense to the charges. *Id.* at 470. We agreed that it was error not to instruct on that defense, but concluded that the error did not affect one of the counts of aggravated murder, one of the counts of robbery, or the count of felon in possession. *Id.* at 477-78. We also concluded that, in light of that error, defendant was entitled to a new penalty-phase jury proceeding on the remaining aggravated murder conviction. *Id.* at 477.

After our remand, the state chose not to retry defendant on the counts that we had reversed based on the instructional error, and the court proceeded with resentencing on the affirmed convictions. The state indicated that it would not be seeking the death penalty on defendant's aggravated murder conviction. Thus, on remand, the new penalty-phase jury was asked to decide whether defendant should receive a sentence of life with the possibility of parole in lieu of a true life sentence—the latter of which, as explained below, is the "default" sentence for aggravated murder. *See Gable v. State of Oregon*, 203 Or App 710, 723, 126 P3d 739, *rev den*, 341 Or 216 (2006) (describing true life sentence as, "in essence, the default sentence" for aggravated murder).

Prior to the penalty phase on remand, defendant moved to exclude victim impact evidence and also filed an objection to the state being permitted to present a rebuttal closing argument to the jury. Defendant argued, in pertinent part, that victim impact evidence was not relevant to the

question of whether mitigating circumstances justified the imposition of a life sentence with the possibility of parole. Defendant further argued that, in light of the fact that the state did not bear the burden of proof on the only question at issue—whether mitigating circumstances existed—it would be unfair to allow the state to present a rebuttal closing argument. The court rejected both arguments.

In addition, before the penalty phase began, counsel and the court engaged in extensive discussions regarding whether the state could present evidence of defendant's potential for future violence. Those discussions focused on the proper operation of various provisions of ORS 163.150— particularly, the appropriate interplay between ORS 163.150(1) and ORS 163.150(3)—when, as here, the state is not seeking the death penalty. Essentially, the prosecutor contended that evidence pertaining to future dangerousness was categorically relevant and admissible under ORS 163.150(1)(b)(B). Conversely, defense counsel argued that such evidence was categorically inadmissible because the "four-question" inquiry prescribed in ORS 163.150(1)(b)(A) to (D) is inapposite when the death penalty is not under consideration.

Before describing the trial court's resolution of that dispute—which anticipated our own—it is essential to place the parties' arguments in concrete context by setting out the pertinent portions of ORS 163.150. *First*, ORS 163.150(1) describes the procedure to be followed in a penalty phase, after a defendant has been convicted of aggravated murder, and the jury is to determine whether a sentence of death, "true life," or life imprisonment with the possibility of parole is warranted:

> "(1)(a)   Upon a finding that the defendant is guilty of aggravated murder, the court, except as otherwise provided in subsection (3) of this section, shall conduct a separate sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment, as described in ORS 163.105(1)(c), life imprisonment without the possibility of release or parole, as described in ORS 163.105(1)(b), or death. * * * *In the proceeding, evidence may be presented as to any matter that the court deems relevant to sentence*

*including, but not limited to, victim impact evidence* relating to the personal characteristics of the victim or the impact of the crime on the victim's family *and any aggravating or mitigating evidence relevant to the issue in paragraph (b)(D) of this subsection*; however, neither the state nor the defendant shall be allowed to introduce repetitive evidence that has previously been offered and received during the trial on the issue of guilt. The court shall instruct the jury that all evidence previously offered and received may be considered for purposes of the sentencing hearing. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or of the State of Oregon. The state and the defendant or the counsel of the defendant shall be permitted to present arguments for or against a sentence of death and for or against a sentence of life imprisonment with or without the possibility of release or parole.

"(b)   Upon the conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

"(A)   Whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that death of the deceased or another would result;

"(B)   Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

"(C)   If raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased; and

"(D)   Whether the defendant should receive a death sentence."

(Emphasis added.)

*Second*, ORS 163.150(2) prescribes the consequence, in such circumstances, if the jury renders a negative finding as to the imposition of the death penalty:

"(2)(a)   Upon the conclusion of the presentation of the evidence, the court shall also instruct the jury that if it reaches a negative finding on any issue under subsection

(1)(b) of this section, the trial court shall sentence the defendant to life imprisonment without the possibility of release or parole, as described in ORS 163.105(1)(b), unless 10 or more members of the jury further find that there are sufficient mitigating circumstances to warrant life imprisonment, in which case the trial court shall sentence the defendant to life imprisonment as described in ORS 163.105(1)(c).

"(b)  If the jury returns a negative finding on any issue under subsection (1)(b) of this section and further finds that there are sufficient mitigating circumstances to warrant life imprisonment, the trial court shall sentence the defendant to life imprisonment in the custody of the Department of Corrections as provided in ORS 163.105(1)(c)."

Thus, "true life" is, "in essence, the default sentence" for aggravated murder. *Gable*, 203 Or App at 723. That is, in the absence of a death sentence, that sentence will be imposed unless the jury finds that there are "sufficient mitigating circumstances to warrant" a sentence of life imprisonment with the possibility of parole. ORS 163.150(2)(b).

*Third*, ORS 163.150(3) prescribes the penalty-phase procedure when the state is not seeking the death penalty:

"(a)  *When the defendant is found guilty of aggravated murder, and * * * the state advises the court on the record that the state declines to present evidence for purposes of sentencing the defendant to death, the court*:

"(A)  *Shall not conduct a sentencing proceeding as described in subsection (1)* of this section, and a sentence of death shall not be ordered.

"(B)  *Shall conduct a sentencing proceeding to determine whether the defendant shall be sentenced to life imprisonment without the possibility of release or parole as described in ORS 163.105(1)(b) or life imprisonment as described in ORS 163.105(1)(c). * * * The procedure for the sentencing proceeding, whether before a court or a jury, shall follow the procedure of subsection (1)(a) of this section, as modified by this subsection.*

"(b)  Following the presentation of evidence and argument under paragraph (a) of this subsection, the court shall instruct the jury that the trial court shall sentence the defendant to life imprisonment without the possibility of

release or parole as described in ORS 163.105(1)(b), unless *after considering all of the evidence submitted, 10 or more members of the jury find there are sufficient mitigating circumstances* to warrant life imprisonment with the possibility of parole as described in ORS 163.105(1)(c). If 10 or more members of the jury find there are sufficient mitigating circumstances to warrant life imprisonment with the possibility of parole, the trial court shall sentence the defendant to life imprisonment as described in ORS 163.105(1)(c)."

(Emphases added.)

We return to the parties' arguments to the trial court on remand regarding the admissibility of evidence concerning defendant's propensity for future violence. As noted, defense counsel contended that, contrary to the prosecutor's assertion, such evidence was not admissible under ORS 163.150(1)(b)(B) ("[w]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society") because the "four-question" inquiry is inapposite when the state is not seeking the death penalty. Rather, under ORS 163.150(3)(a)(B), the "sentencing proceeding * * * shall follow the procedure of subsection (1)(a)"—and not subsection (1)(b). Defendant further argued that, consistently with ORS 163.150(3)(b), the jury's consideration should be limited to whether "there are sufficient mitigating circumstances to warrant life imprisonment with the possibility of parole." From that premise, defense counsel asserted that evidence of defendant's propensity for future dangerousness was irrelevant to whether "sufficient mitigating circumstances" justified the imposition of a life sentence with the possibility of parole, instead of "true life."

The trial court concluded that evidence of defendant's future dangerousness was admissible as relevant to the inquiry framed by ORS 163.150(3). The court agreed with defendant that the evidence was not admissible as relevant to the inquiry under ORS 163.150(1)(b) because that inquiry was inapposite—and the court further rejected the state's sweeping assertion that evidence of "aggravating circumstances" of any sort is categorically admissible under ORS 163.150(1). Nevertheless, the court reasoned that evidence of defendant's potential for future violence was relevant to the

jury's consideration of "whether it's life with or without [parole]." That is, "[t]he question for the jury is not whether aggravating circumstances outweigh mitigating circumstances. The question for the jury is whether there [are] sufficient mitigating circumstances not to impose life without the possibility of parole."

Thus, during the penalty phase, the state did not present its evidence in terms of "aggravating" circumstances—but, rather, in terms of whether sufficient mitigating circumstances existed. Towards that end, the state presented expert opinion testimony by Dr. Frank Colistro, a psychologist, to the effect that defendant had an antisocial personality disorder and psychopathy, is not amenable to treatment, and is likely to persist indefinitely in high risk and violent behavior. The state also presented evidence about defendant's gang activities and prior violence, as well as evidence about the impact of the crime on the victim's family.

Conversely, with respect to mitigation, defendant presented evidence that he had rehabilitated himself while incarcerated since the murder, had given up his gang affiliation, had a close relationship with his family, had engaged in religious activities, and had become a trustee while incarcerated at the Justice Center awaiting resentencing. Ultimately, the jury concluded that there were not sufficient mitigating circumstances to justify imposition of a life sentence with the possibility of parole.

On appeal, defendant assigns error to the trial court's admission, during the penalty phase, of (1) evidence of his potential for future violence and (2) victim impact evidence. Defendant also contends that the trial court erred in permitting the state to present rebuttal closing argument. We address, and reject, each contention in turn.

Defendant argues that evidence of his future dangerousness, in particular, Colistro's testimony, was improperly admitted because it pertained to the question of "[w]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," ORS 163.150(1)(b)(B), and should not have been admitted because that section does not apply

to penalty-phase proceedings when the death penalty is not under consideration. *See* ORS 163.150(3)(b)(B). Defendant's argument is purely statutory—that is, he does not argue that such evidence does not meet the criteria for general relevancy. Defendant notes that, in situations in which the death penalty is not one of the options for the penalty-phase jury to consider, ORS 163.150(3) defines how the penalty phase shall be conducted. ORS 163.150(3)(a)(A) specifically indicates that the court is *not* to conduct a sentencing proceeding as described in subsection (1), and ORS 163.150(3)(a)(B) specifies that the proceeding instead should be to determine whether the sentence of life imprisonment without the possibility of parole or life imprisonment with the possibility of parole should be imposed, and that that proceeding "shall follow the procedure of subsection (1)*(a)* of this section, as modified by this subsection." (Emphasis added.) Thus, defendant posits, because subsection (1)(a) has been specifically incorporated into this type of proceeding under subsection (3), while subsection (1)(b), which includes the provision concerning evidence of future dangerousness, has not been incorporated, there was no basis for admitting evidence of future dangerousness in the present proceeding.

The state responds that, although ORS 163.150(3) does not specifically incorporate the future dangerousness provisions of ORS 163.150(1)(b), the jury nonetheless may consider evidence of future dangerousness because ORS 163.150(2) does specifically cross-reference the provisions of subsection (1)(b)—"Upon the conclusion of the presentation of the evidence, the court shall also instruct the jury that if it reaches a negative finding on any issue under subsection *(1)(b)* of this section, the trial court shall sentence defendant * * *." (Emphasis added.) Consequently, the state reasons, subsection (1)(b) has been incorporated indirectly and does apply in this type of sentencing proceeding.

■ As framed on appeal, the parties' arguments are not just "two ships passing in the night." Rather—and respectfully—neither deals meaningfully with the basis upon which the trial court actually admitted the disputed evidence. As noted, the trial court did *not* determine that evidence of defendant's potential for future violence was admissible as relevant under ORS 163.150(1)(b)(B), by virtue of ORS

163.150(2) or otherwise. The trial court *did* rule that such evidence was relevant to the jury's determination of whether "sufficient mitigating circumstances" warranted the imposition of "life with" instead of "life without" parole. *See* 215 Or App at 441-42. For the reasons that follow, we agree with that reasoning and result.

■      In construing ORS 163.150, we attempt to ascertain and give effect to the legislature's intent, looking first to the text of the statute in context and, if the text, read in context, is ambiguous, to legislative history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In this case, we conclude that the trial court's ruling comports with the unambiguous text of ORS 163.150.

We note at the outset that, contrary to the state's assertion, in cases in which the state is not seeking the death penalty, ORS 163.150(3)(a)(B) precludes the jury from engaging in the four-part inquiry prescribed in ORS 163.150(1)(b)(A) to (D). In such cases, "[t]he procedure for the sentencing proceeding * * * shall follow the procedure of *subsection (1)(a)* of this section, as modified by this subsection." ORS 163.150(3)(a)(B) (emphasis added). "[S]ubsection (1)(a)"—not subsection (1)(a) *and* subsection (1)(b).

Nor does the cross-reference to subsection (1)(b) in subsection (2)(b) alter that construction. Rather, read in total context, subsection (2) functions as an adjunct to subsection (1) solely in those cases in which all three aggravated murder sentencing options—the death penalty, "true life," and life imprisonment with the possibility of parole—are presented to the penalty-phase trier of fact. Where, however, the death penalty is not an option, subsection (3), with its express incorporation of the "procedure of subsection (1)(a) * * * as modified by this subsection," governs exclusively. In sum, given the structure of the entire statute—and the provisions of subsection (3)(b) in particular—it is apparent that neither subsection (1)(b) nor subsection (2), which cross-references subsection (1)(b), applies when the penalty-phase jury is not considering the death penalty.

Thus, the universe of relevant penalty-phase evidence when the state is not seeking the death penalty must

be defined by reference to ORS 163.150(1)(a) and to matters pertaining to whether "there are sufficient mitigating circumstances to warrant life imprisonment with the possibility of parole." ORS 163.150(3)(b). Like the trial court, we have no difficulty in concluding that the state's evidence concerning defendant's potential for future violence, specifically including Colistro's testimony, was relevant to the jury's assessment of whether there were sufficient mitigating circumstances to warrant life imprisonment with the possibility of parole.

The question the jury is asked to decide under subsection (3) is whether a person who already has committed an aggravated murder should serve his life sentence for that crime within the confines of an institution where he will be under strict supervision and will have no lawful access to weapons, or whether he should be permitted the possibility of spending at least part of his life sentence among society at large, under a great deal less supervision. It is frankly difficult to understand why evidence concerning a defendant's mental health—and particularly a mental health expert's conclusions regarding whether defendant had or continues to have a propensity toward violent behavior—would not be relevant to that question. Indeed, a defendant's dangerousness is perhaps one of the most cogent factors that one would expect a jury to consider in making such a difficult decision. The trial court did not err in allowing the state to present Colistro's testimony to the penalty-phase jury.

■ Defendant next contends that the trial court erred in admitting victim impact evidence during the penalty phase of the proceeding. Specifically, defendant asserts that such evidence lacks relevance to the question of whether mitigating circumstances exist that would justify the imposition of a life sentence with the possibility of parole. In *George*, we decided that issue adversely to defendant's position. We readopt the following reasoning from our opinion in *George*:

> "[T]he procedure described in [ORS 163.150](1)(a) is not limited to death-penalty cases, but applies to any case in which it must be determined whether to sentence a defendant to life imprisonment, life without the possibility of release or parole, or death. That the procedure is not limited to death penalty cases is confirmed by subsection (3)(a),

which expressly provides that the procedures described in subsection (1)(a) apply even when the state does not seek the death penalty.

"Moreover, the phrasing of subsection (1)(a) itself confirms that the admissibility of victim impact evidence is not limited to death-penalty proceedings. It states that two types of evidence may be presented. First, it states without further qualification that evidence as to 'any matter that the court deems relevant to sentence,' including victim impact evidence, may be presented. Second, it states that 'any aggravating or mitigating evidence relevant to the issue in paragraph (b)(D) of this subsection,' that is, whether defendant should receive a death sentence, also may be presented. By its terms, the phrase 'relevant to the issue in paragraph (b)(D)' modifies only the phrase that immediately precedes it, namely, 'any aggravating or mitigating evidence.' *See State v. Webb*, 324 Or 380, 386, 927 P2d 79 (1996) (Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence.) (quoting Norman J. Singer, 2A *Sutherland Statutory Construction* § 47.33, 270 (5th ed 1992)). We conclude that the trial court did not err in considering the challenged victim impact evidence."[3]

183 Or App at 592-93 (internal quotation marks omitted). In sum, ORS 163.150(3), which governs penalty-phase proceedings when the death penalty is not under consideration, incorporates by reference ORS 163.150(1)(a), which provides, in pertinent part, that "evidence may be presented * * * including * * * victim impact evidence relating to the personal characteristics of the victim or the impact of the crime on the victim's family[.]"[4] The trial court did not err in admitting victim impact evidence during the penalty phase.

---

[3] In *George*, we construed a version of ORS 163.150 that antedated the 2003 version of the statute that we construe and apply here. *See* 215 Or App at 436 n 2. Although that version of the statute varied in several material respects, the operative language of ORS 163.150(1)(a) pertaining to victim impact evidence was the same.

[4] As noted above, our discussion pertains to the 2003 version of the statute, *see* 215 Or App at 436 n 2, but we note that the statute was subsequently amended in 2005 to include a specific provision in ORS 163.150(3)(a)(B) for the admission of victim impact evidence. Or Laws 2005, ch 480, § 1.

■　　Finally, defendant argues that the trial court erred in permitting the state to make a rebuttal closing argument. Defendant notes that ORS 163.150(1)(a) concludes with a statement that "[t]he state and the defendant or the counsel of the defendant shall be permitted to present arguments for or against * * * a sentence of life imprisonment with or without the possibility of release or parole." Defendant asserts that that sentence expresses a legislative intent that the state not be given an opportunity to make a rebuttal argument.

*McNeely*, which neither party cites, is dispositive. 330 Or at 467. In *McNeely*, a death penalty case, the defendant asserted that, because the state did not bear the burden of proof on the question "[w]hether the defendant should receive a death sentence," ORS 163.150(1)(b)(D), the state should not have been allowed to make a rebuttal argument addressing that question. *Id.* The court, invoking ORCP 58 B(4)—which is now ORCP 58 B(6)[5]—rejected that argument:

> "[D]efendant posits that, because the state has no burden of proof on the fourth question, ORCP 58 B(4) is inapplicable here. ORCP 58 B(4) provides, in part:
>
> > " 'When the evidence is concluded, * * * the plaintiff shall commence and conclude the argument to the jury[.]'
>
> "ORS 136.330(1) makes ORCP 58 B applicable to criminal trials. *See State v. Stevens*, 311 Or 119, 147-48, 806 P2d 92 (1991) (penalty and guilt phases are governed by ORCP 58 B(4)).
>
> "Assuming, *arguendo*, that the rule allowing a plaintiff the opportunity for rebuttal arose because a plaintiff bears the burden of proof, that does not change or limit the text of ORCP 58 B(4). When the legislature adopted that rule, it did not limit a plaintiff's right to rebuttal to those issues on which the plaintiff bore the burden of proof. We agree with the state that ORCP 58 B(4) authorizes the state to present rebuttal argument on any penalty-phase matter raised by a defendant's argument. We conclude that, absent some limit, statutory or constitutional, on ORCP 58 (B)(4)—and

---

[5] ORCP 58 B was amended by the Council on Court Procedures on December 9, 2000.

defendant identifies none here—the state may address the fourth question in its rebuttal closing argument. Accordingly, we hold that the trial court did not err in denying defendant's motion to limit the prosecutor's penalty-phase rebuttal argument on the fourth question."

*McNeely*, 330 Or at 468.

This case is closely analogous to *McNeely*. ORCP 58 B(6) applies to criminal trials, ORS 136.330(1), and indicates that the plaintiff shall both "commence" and "conclude" the arguments to the jury. In a criminal case, the state is the plaintiff. That rule applies regardless of which party (if any) bears the burden of proof or persuasion on issues that may be before the jury. Nothing in ORS 163.150(1)(a) purports to alter how ORCP 58 B(6) is to apply during the penalty phase of an aggravated murder prosecution, regardless of whether the penalty-phase jury is considering three sentencing options, or only two.

Defendant also asserts in a conclusory manner that allowing the state to make a rebuttal argument violates various constitutional provisions. We reject those undeveloped arguments without discussion. The trial court properly permitted the state to present rebuttal arguments to the penalty-phase jury.

Affirmed.